# 18-1304

# United States Court of Appeals
*for the*
## Second Circuit

◆•◆

Entesar Osman Kashef, Alfadel Mosabal, Abubakar Abakar, Siama Abdelnabi Hamad, Abbo Ahmed Abakar, Hawa Mohamed Omar, Jane Doe, Nyanriak Tingloth, Reverend Anderia Lual, Nicolas Hakim Lukudu, Turjuman Ramadan Adam, Johnmark Majuc, Joseph Jok, Halima Samuel Khalifa, Ambrose Martin Ulau, Sandi (Sunday) Georgari Marjan, Shafika G. Hassan, Jane Roe, Judy Doe, Sara Noureldirz Abdalla, Amir Ahmed,

*Plaintiffs - Appellants*,

v.

BNP Paribas S.A., a French corporation, BNP Paribas North America, Inc., a Delaware corporation, Does 1-10, BNP Paribas S.A., New York Branch,

*Defendants - Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
NO. 16-CV-3228**

**AMENDED BRIEF OF MEMBERS OF CONGRESS AS *AMICI CURIAE***

Peter K. Stris
Brendan S. Maher
Kenneth J. Halpern
Elizabeth R. Brannen
John Stokes
STRIS & MAHER LLP
725 S. Figueroa St., Ste. 1830
Los Angeles, CA 90017

# TABLE OF CONTENTS

INTEREST OF *AMICI* .................................................................................. 1

SUMMARY OF ARGUMENT ...................................................................... 4

ARGUMENT ................................................................................................. 6

CONCLUSION .............................................................................................. 9

CERTIFICATE OF COMPLIANCE ........................................................... 10

CERTIFICATE OF SERVICE .................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) .................................................................................... 6

*W.S. Kirkpatrick v. Environmental Tectonics Corp. Int'l*,
  493 U.S. 400 (1990) .................................................................................... 6

**Other Authorities**

Exec. Order No. 13,412, 71 Fed. Reg. 200 (Oct. 17, 2006) .................................. 7, 8

H.R. Con. Res. 467, 108th Cong. (2004) ............................................................. 7, 8

S. Con. Res. 133, 108th Cong. (2004) (enacted) ......................................................... 7

*Rep. of the Int'l Comm'n of Inquiry on Darfur to the U.N. Secretary General*, 3, U.N. Doc. S/2005/60 (Jan. 25, 2005) .................................................... 8

# INTEREST OF *AMICI*

*Amici* are current Members of Congress with constituents who were profoundly impacted by the atrocities in Darfur and other regions of Sudan and South Sudan:[1]

>Rep. Debbie Wasserman Schultz (D-FL 23rd District)
>
>Rep. Brad Sherman (D-CA 30th District)
>
>Rep. Thomas J. Rooney (R-FL 17th District) (Co-Chair, House Caucus on Sudan and South Sudan)
>
>Rep. Michael Capuano (D-MA 7th District) (Co-Chair and Co-Founder, House Caucus on Sudan and South Sudan)
>
>Rep. Chellie Pingree (D-ME 1st District)
>
>Rep. Ruben Gallego (D-AZ 7th District)
>
>Rep. James P. McGovern (D-MA 2nd District)
>
>Rep. Conor Lamb (D-PA 18th District)
>
>Rep. Raul Ruiz (D-CA 36th District)

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No party or counsel to any party contributed money intended to fund preparation or submission of this brief. No person, other than the *amici*, its members, or its counsel, contributed money that was intended to fund preparation or submission of this brief. Counsel for both parties have consented to the filing of this brief.

> Rep. Barbara Lee (D-CA 13th District) (Co-Chair, House Caucus on Sudan and South Sudan)
>
> Rep. André Carson (D-IN 7th District)
>
> Rep. Jerrold Nadler (D-NY 10th District)
>
> Rep. Donald M. Payne, Jr. (D-NJ 10th District)
>
> Rep. Julia Brownley (D-CA 26th District)
>
> Rep. Jared Huffman (D-CA 2nd District)
>
> Rep. Rosa DeLauro (D-CT 3rd District)
>
> Rep. David Cicilline (D-RI 1st District)

Thousands of United States citizens and lawful permanent residents have overcome extraordinary injury and suffering in Sudan to rebuild their lives in America. They are now living, working, and raising their families in our states and districts. They have become vital parts of our American communities and we are proud to represent them.

At issue in this case is whether their lawsuit can proceed against BNP Paribas ("BNPP") for actions it took in the United States that enabled Sudanese officials to evade U.S. sanctions and, by that means, to finance the militias that committed the atrocities. We have an interest in protecting our constituents' right of access to U.S. courts to redress grievous wrongs committed against them that are within the jurisdiction of those courts.

We also have an interest in ensuring that the "act of state doctrine," which was the basis for the dismissal of the lawsuit below, is not misapplied to give deference to private actors for abetting serious crimes that both the Legislative and Executive Branches full-throatedly condemned as human rights violations. Indeed, the Executive Branch prosecuted BNPP for the actions that led to those crimes and that form the basis of our constituents' case. This is of particular interest to us because the act of state doctrine is rooted in a concern that the judiciary should not interfere with the conduct of foreign policy by the political branches. Yet the construction that the district court applied in this case does not protect but rather *contradicts* the policy adopted by Congress and the Executive Branch.

## SUMMARY OF ARGUMENT

The Appellants in this case are a class of Sudanese immigrants who personally suffered as a result of BNP Paribas' ("BNPP") assistance to the Sudanese government in evading U.S. sanctions. These individuals endured unimaginable atrocities at the hands of the government militias that BNPP helped finance. Many were raped, maimed, tortured, or forced to watch as their family members were murdered. They now seek to hold BNPP to account for the unspeakable horrors it facilitated.

The district court erroneously prevented their lawsuit from going forward, finding that the claims were barred by the "act of state doctrine." The act of state doctrine prevents courts in the United States from sitting in judgment of the official acts of a foreign sovereign. But the Supreme Court has unequivocally held that the doctrine applies only to "official acts" of a very limited sort—namely, those that are formalized in a decree or measure or some other fashion. U.S. courts must give effect to official acts of that kind (just as, under the Full Faith and Credit Clause, one state must give effect to the official acts of another state).

By contrast, the doctrine is categorically *in*applicable in this case, where the court simply might find that the relevant activities violated the law. And even if it could apply, the key consideration is whether its application might conflict with foreign policy-making by the political branches. In this case, there is no such conflict

because Congress *unanimously* condemned the conduct of the Sudanese government as genocide in violation of international law. At Congress' urging, the Executive Branch followed suit and also imposed sanctions on the Sudanese officials responsible for the atrocities. And the Executive Branch successfully prosecuted BNPP for the acts that form the basis of the lawsuit. The imposition of civil penalties on the same actor for the same acts plainly does not conflict with the foreign policy of the political branches, past or present.

# ARGUMENT

As this Court is aware, the Appellants have argued that the act of state doctrine is categorically inapplicable to this case, because there is no official act of a foreign sovereign (such as a judgment or decree) that the Appellants have asked this Court to invalidate. *See, e.g.*, App. Br. 12. We agree with the Appellants' argument, which is supported by the Supreme Court's unanimous decision in *W.S. Kirkpatrick* holding that the doctrine is inapplicable outside that narrow context, even when "the facts necessary to establish [the plaintiff's] claim will also establish that [a sovereign act] was unlawful." *W.S. Kirkpatrick v. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 406 (1990).

But in the event this Court concludes the doctrine could apply to a case of this type, one of the important considerations is whether adjudication of the case raises "the possibility of conflict" with the political branches responsible for making United States foreign policy. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 433 (1964); *see id.* at 423.

We write to underscore to this Court that Congress has spoken clearly, with one voice, and in concert with the Executive Branch, to condemn the Sudanese government's actions, and thus there is no risk that adjudicating this case will hamper the political branches' foreign policy efforts.

1. As the crimes giving rise to this case occurred, the House and Senate unanimously adopted concurrent resolutions "declar[ing] that the atrocities unfolding in Darfur, Sudan, are genocide," "call[ing] on the [Bush] Administration to continue to lead an international effort to stop genocide in Darfur," and declaring the Government of Sudan to be in violation of the Convention on the Prevention and Punishment of the Crime of Genocide. H.R. Con. Res. 467, 108th Cong. (2004) (enacted); S. Con. Res. 133, 108th Cong. (2004) (enacted).

These atrocities are the very acts that caused the injuries to plaintiffs—our constituents—that underlie their lawsuit. And Congress condemned those actions in the strongest words, labeling them unequivocally as "genocide." Congress could not have made its view on this matter any clearer.

2. The concurrent resolution also recommended action from the Executive Branch. And thereafter, President Bush followed our recommendation by issuing an executive order that reaffirmed U.S. condemnation of the Sudanese government's crimes.

> I, GEORGE W. BUSH, President of the United States of America, find that, due to the continuation of the threat to the national security and foreign policy of the United States created by certain policies and actions of the Government of Sudan that violate human rights, in particular with respect to the conflict in Darfur, where the Government of Sudan exercises administrative and legal authority and pervasive practical influence, and due to the threat to the national security and foreign policy of the United States posed by the pervasive role played by the Government of Sudan in the petroleum and petrochemical industries in Sudan, it is in the interests of the United States to take

7

additional steps with respect to the national emergency declared in Executive Order 13067 of November 3, 1997.

Exec. Order No. 13,412, 71 Fed. Reg. 200 (Oct. 17, 2006).

Further, the Bush administration also imposed sanctions on Sudanese officials responsible for the atrocities in Darfur. Congress thus played a leading role in crafting the political branches' response to the actions at issue in this case: resounding denunciation.

3. Congress also shaped the international community's response to the atrocities at issue in this case. The House and Senate's concurrent resolution called on the United Nations and the U.N. Secretary General to label the atrocities in Darfur as genocide and take action. H.R. Con. Res. 467, 108th Cong. (2004) (enacted). The United Nations thereafter issued a report declaring the Government of Sudan "responsible for serious violations of international human rights and humanitarian law amounting to crimes under international law." Int'l Comm'n of Inquiry on Darfur, *Rep. of the Int'l Comm'n of Inquiry on Darfur to the U.N. Secretary General*, 3, U.N. Doc. S/2005/60 (Jan. 25, 2005). Thus, Congress' condemnation has touched both the domestic and international spheres—further underscoring that adjudication of this case carries no risk of undermining American foreign policy.

4. Finally, we are aware of no imminent or contemplated congressional action that could alter Congress' view on this matter. That should hardly be surprising: acts of genocide, mass rape, and torture are universally and perpetually worthy of

condemnation. This Court should therefore rest assured that its adjudication of this case carries no risk of undermining the foreign policy objectives of Congress going forward. Nor could it in any event, because the suit does not even seek recovery from the Sudanese government or any Sudanese entity. Rather, it is directed at a private actor for the same conduct that was criminally prosecuted by the Executive Branch and the State of New York and punished with billions of dollars in forfeitures and fines. Civil liability of the same entity for the same acts plainly will not interfere with the conduct of United States foreign policy.

## CONCLUSION

For the foregoing reasons, we urge the Court to conclude that concern about impinging on the political branches' foreign policy goals offers no basis to apply the act of state doctrine to this case.

Respectfully submitted,

/s/ Kenneth J. Halpern

Peter K. Stris
Brendan S. Maher
Kenneth J. Halpern
Elizabeth R. Brannen
John Stokes
STRIS & MAHER LLP
725 S. Figueroa St., Ste. 1830
Los Angeles, CA 90017
(213) 995-6800

*Attorneys for* Amici Curiae

**CERTIFICATE OF COMPLIANCE**

I hereby certify that pursuant to Local Rule 32(a)(7)(B), this brief contains 1,627 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), and complies with the format, typeface, and type-style requirements of Federal Rules of Appellate Procedure 32(a)(4)-(6).

Dated: July 27, 2018 /s/ Kenneth J. Halpern

Peter K. Stris
Brendan S. Maher
Kenneth J. Halpern
Elizabeth R. Brannen
John Stokes
Stris & Maher LLP
725 S. Figueroa St., Ste. 1830
Los Angeles, CA 90017
(213) 995-6800

*Attorneys for* Amici Curiae

# CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2018, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 27, 2018                   /s/ Kenneth J. Halpern

Peter K. Stris
Brendan S. Maher
Kenneth J. Halpern
Elizabeth R. Brannen
John Stokes
Stris & Maher LLP
725 S. Figueroa St., Ste. 1830
Los Angeles, CA 90017
(213) 995-6800

*Attorneys for* Amici Curiae